MEIER, Plaintiff-Respondent, v. PURDUN, and wife, Defendants-Appellants.

Supreme Court

*No. 77–195. Submitted on briefs October 10, 1979.—Decided March 4, 1980.*
(Also reported in 288 N.W.2d 839.)

For the appellants the cause was submitted on the brief of *Ernest T. C. Hanson* of Eau Claire.

For the respondent the cause was submitted on the brief of *Robert W. Dernbach, S.C.,* of Eau Claire.

DAY, J.  This is an appeal from: (1) a judgment on the pleadings[1] granted to the plaintiff, Ronald L. Meier,

---

[1] The motion for judgment on the pleadings was granted pursuant to sec. 802.06, Stats. 1975.

"**802.06. Defenses and objection; when and how presented; by pleading or motion; motion for judgment on the pleadings. . . .**

for $7,231.75 principal, interest, costs and disbursements, based on a judgment by confession entered in 1962 against the defendants, Robert W. Purdun and Wilma F. Purdun, his wife; and (2) from an order denying defendants' motion to vacate the 1962 judgment as being void for lack of due process because the confession of the judgment statute in effect at that time did not require notice to the defendants before entry of judgment with opportunity to defend or require notice of entry after judgment.

The principal question on appeal is: Was the judgment by confession against the defendant void for lack of due process because the statute[2] under which it was obtained

---

"(3) JUDGMENT ON THE PLEADINGS. After issue is joined between all parties but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by s. 802.08."

[2] The confession of judgment statute existing at the time the 1962 judgment was entered provided:

"270.69. **Judgment without action; warrant of attorney.** (1) A judgment upon a bond or promissory note may be rendered, without action, either for money due or to become due, or to secure any person against contingent liability on behalf of the defendant, or both, in the manner prescribed in this section.

"(2) The plaintiff shall file his complaint and an answer signed by the defendant or some attorney in his behalf, confessing the amount claimed in the complaint or some part thereof, and such bond or note and, in case such answer is signed by an attorney, an instrument authorizing judgment to be confessed. The plaintiff or someone in his behalf shall make and annex to the complaint an affidavit stating the amount due or to become due on the note or bond, or if such note or bond is given to secure any contingent liability the affidavit must state concisely the facts constituting such liability and must show that the sum confessed does not exceed the same. The judgment shall be signed by the court or a

did not require notice and opportunity to defend before entry.

We conclude the judgment was not void on due process grounds and affirm.

Other issues raised by the Purduns will be discussed in the balance of this opinion.

Counsel for the Purduns states in his brief that this case is a continuation of the case involving the same parties decided by this court and reported in *Meier v. Purdun,* 70 Wis.2d 1100, 236 N.W.2d 262 (1975), (hereinafter referred to as *Meier I*).

*Meier I* granted Mr. Meier's motion for leave to sue on a judgment rendered in 1962 pursuant to sec. 270.95,

---

judge and shall be thereupon entered and docketed by the clerk and enforced in the same manner as judgments in other cases." Sec. 270.69, Stats. 1961.

In 1967 a third subsection was added to this statute to provide that within thirty days after entry of the judgment, the plaintiff shall send by certified mail notice of entry to the judgment debtor. Failure to do so invalidated the judgment. Sec. 270.69(3), Stats. 1967, effective May 28, 1967, provided:

". . . (3) Within 30 days after a judgment is entered under sub. (2) the plaintiff shall by certified mail, transmit notice of entry thereof to the judgment debtor at his last known address. Failure to transmit such notice shall invalidate the judgment."

This section has been construed to mean that a judgment involved under this section is also void ". . . in the sense that it is subject to being vacated at any time where the proper notice of entry has not been given." *Home Bank v. Becker,* 48 Wis.2d 1, 7, 179 N.W.2d 855 (1970).

By Ch. 261, Laws of 1973, 270.69 was repealed and recreated to read:

"270.69. **No judgment without action.** Any authorization in a note executed after June 18, 1972, for the creditor, or other person acting on his behalf, to confess judgment for the debtor shall be void and unenforceable."

(Sec. 270.69 renumbered 806.25, Stats., Supreme Court Order; 57 Wis.2d 740; amended to substitute "the creditor's" for "his" by Ch. 218, Laws of 1975).

Stats. 1971,[3] which is now found in sec. 806.23, Stats. 1977. The 1962 judgment was entered on a cognovit note signed by Robert and Wilma Purdun, the defendants. The judgment was entered without prior notice or hearing to the Purduns. The facts leading up to the present case are set forth in this court's earlier opinion substantially as follows.

Ronald L. Meier and his brother Robert Meier purchased a 280-acre farm in 1958, under a land contract from Lester Lowman and Elaine Lowman, his wife. In 1962, they decided to sell the farm. The Purduns purchased the farm in a transaction in which the Meier brothers gave a quitclaim deed to the Lowmans. The Purduns purchased the land from the Lowmans. At the time of transfer of deed from the Meiers to the Lowmans, the Meiers received a cognovit promissory note from the Purduns in the amount of $3,500, payable in ten years at $16.66 per month plus interest. After the death of his brother, Ronald L. Meier became the sole holder of the note. On July 5, 1962, Robert Meier took a judgment by confession on the note against the Purduns.

This court said in its opinion:

"(Taking judgment appears to have been a part of the winding up of the 'sort of partnership' relationship between Ronald Meier and his brother.) Respondent Robert Purdun testified that he knew of the judgment, and had attempted to settle the matter. The respondents [Purduns] have never made any payments on the note or judgment." 70 Wis.2d at 1106.

This court held that a showing of nonpayment of the 1962 judgment by the judgment debtor and expiration of

---

[3] That section provides:

"270.95. **Action on judgment, when brought.** No action shall be brought upon a judgment rendered in any court of this state between the same parties, without leave of the court, for good cause shown, on notice to the adverse party."

the creditor's ten year lien right under sec. 270.79, Stats. 1971, constituted good cause for leave of the court to allow an action by the creditor on the unsatisfied judgment.

In accordance with this court's opinion ordering the trial court to grant Ronald Meier leave to sue, he filed a complaint seeking a new judgment based on the 1962 judgment on May 12, 1976. The Purduns filed an answer on June 14, 1976, denying that Ronald Meier was the surviving partner in a partnership with his brother, and that the cognovit note was "obtained by misrepresentation, mistake, cohersion (sic), duress, wrongful compulsion, threats and was without consideration therefore." On June 14, 1976, Meier moved that these defenses be stricken as insufficient. By order dated July 2, 1976, the trial court, after hearing, granted the motion to strike the defenses. The answer, denying that a partnership existed, was stricken on the grounds that the defense should have been raised on a motion to reopen the judgment by confession and was thus waived. The defense that the note was obtained by fraud, duress and mistake was stricken under sec. 802.03 (2), Stats., as not being stated with particularity.

The Purduns then filed an amended answer which attempted to set forth the acts constituting fraud, duress, mistake and lack of consideration. It was alleged that after the Purduns sold their farm and moved onto the Meier farm a meeting was held and that the Purduns were told that if they did not sign the note they would be forced to forfeit the farm and move. Also, some of the property purchased along with the farm was alleged to be essentially useless. It was also alleged that no written notice was given to the Purduns prior to the entry of the judgment on the note and that the deceased brother, Robert Meier, did discuss the claim with the Purduns and it was their understanding that the "claim had been

abandoned; that defendants had no way of knowing their rights would in any way be prejudiced by a failure to bring action to vacate the judgment." They also re-alleged the lack of a partnership relationship.[4]

---

[4] In *Meier I*, a synopsis of Mr. Purdun's testimony at p. 107–109 of Appellant's Brief gives the following reasons for signing the cognovit note and the events following entry of the 1962 judgment:

"ROBERT W. PURDUN TESTIFIED AS FOLLOWS:

"DIRECT EXAMINATION BY COURT:

"My name is Robert W. Purdun, I live at Rural Route 1, Augusta, and have worked for National Presto for six years.

"I recall that on September 26, 1960, my wife and I signed a note payable to Robert Meier and Ronald L. Meier.

"After a judgment was taken against me on July 5, 1962, I was advised of it and an effort was made to collect the judgment although the Sheriff never did come out to see me with an execution.

"I made several attempts to clear the judgment but never got it settled.

"I tried to settle the judgment through FHA and we offered a certain amount to get it cleared up but apparently nothing was worked out.

"We gave the note because they did not ask a large enough down payment in the first place and we had to give the note to make up the the difference.

"Nothing was said about the note the day I made the deal but when we got around to closing the transaction the next day they explained to me that I had to give the note for the extra down payment.

"The farm is located in the Town of Ludington, is not too bad a farm and contains 320 acres. I haven't worked the farm since FHA sold me out in 1966 and now I run 26 horses on it.

"We paid $23,000.00 for the farm and we got some cows and machinery along with it but the machinery was in very bad shape. I do not recall the exact number of cows but I think it was around 20 milk cows and 9 heifers.

"I was born and raised on a farm but the farming operation did not work because there was no machinery in operating condition when we took over and then there was this note to contend with. We replaced most of the machinery and several cows on account of mastitis and black leg, and metal and things like that.

The trial court, in an order dated January 21, 1977, granted Ronald Meier's motion to strike the entire amended answer of the defendants on the grounds that it presented an insufficient defense and that immaterial matters were pleaded.

Meier moved for judgment on the pleadings. The Purduns then made an undefined motion to have the trial court find the original cognovit judgment void for lack of prior notice and hearing, and moved for reconsideration of the order striking their amended answer.

A final hearing was held on March 14, 1977, where arguments were heard from counsel for both parties. The trial court granted the Meier's motion for judgment on the pleadings. He was granted judgment of $3,822.18 as the principal amount of the 1962 judgment plus interest in the amount of $3,282.77 for a total of $7,104.95 plus costs of $126.80. The Purduns appeal.

This appeal is taken both from the judgment granted on the pleadings and the order denying the defendants motion to vacate the 1962 judgment as void. Although the notice of appeal states only that the judgment of the circuit court is appealed from, the judgment incorporated the order denying the motion to vacate the original judgment. Both the judgment and the order are properly before the court. Sec. 817.11, Stats. 1975. Any error in the

---

"My wife and I and three sons, age 10, 13 and 16 live on the farm.

"My take home pay averages around $400.00 every two weeks—sometimes it's less, $300.00, and sometimes it's between $300.00 and $400.00."

At that hearing Mr. Meier testified in part as follows:

"We sold the place to Mr. and Mrs. Purdun for $23,750.00 with $5,000.00 being paid down. The $3,500.00 note represented the balance of the money we had coming from the sale of the farm and out of the $5,000.00 we had to pay the United Farm Agency its commission and also taxes and bills."

notice of appeal was waived by the respondent Meier's failure to object and his arguments on the merits. *Hargrove v. Peterson,* 65 Wis.2d 118, 123, 221 N.W.2d 875 (1974).

The Purduns argue that the cognovit or confession of judgment statute in effect in 1962 was void on its face as violation of due process because it had no requirement of notice with opportunity to defend prior to taking judgment nor did it require notice of entry.

The United States Supreme Court has declined to hold confession of judgment statutes invalid *per se* but had said it depends on the facts in the particular case.

This court has never before been confronted with a challenge to the constitutionality of Wisconsin's cognovit note statute, either facially or as applied, under the due process clause of the United States Constitution.

In *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 92 S. Ct. 775, 331 L. Ed.2d 124 (1972), a cognovit note procedure under Ohio law was attacked as denying the debtor due process of law. The Supreme Court stressing the facts of the case held that the cognovit note does not *per se* violate the Fourteenth Amendment. The court found that the particular cognovit note was executed as part of an arm's-length transaction between two corporations. Therefore, there had been no overreaching and the debtor corporation voluntarily, knowingly and intelligently waived its rights to prejudgment notice and hearing. In addition, Ohio procedure provided that notice to the judgment debtor was required and there was a post-judgment review procedure allowing defenses on the merits to be presented.

The Supreme Court in *Overmyer* then explained:

"1. Our holding necessarily means that a cognovit clause is not, *per se,* violative of Fourteenth Amendment due process. Overmyer could prevail here only if the clause were constitutionally invalid. The facts of this

case, as above, are important, and those facts amply demonstrate that a cognovit provision may well serve a proper and useful purpose in the commercial world and at the same time not be vulnerable to constitutional attack.

"2. Our holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue." 405 U.S. at 187–188.

In *Swarb v. Lennox*, 405 U.S. 191, 92 S. Ct. 767, 31 L. Ed.2d 138, *reh. denied*, 405 U.S. 1049, 92 S. Ct. 1303, 31 L. Ed.2d 592 (1972), the Supreme Court affirmed a decision of a three judge District Court which had granted declaratory and injunctive relief for a limited class of cognovit signers in Pennsylvania. The District Court, in ruling on a class action brought on behalf of all Pennsylvania residents who had signed cognovit notes, held that as to persons earning less than $10,000 per year there was no showing of an intentional relinquishment of known rights by members of that class in executing confession of judgment clauses. Thus, the existing Pennsylvania procedures for obtaining cognovit judgments were invalid under the Due Process Clause as to those members of the class. The plaintiffs appealed, alleging that the Pennsylvania statute should be declared unconstitutional on its face. The Supreme Court refused to find that the Pennsylvania procedure was facially invalid as to all cognovit note signers. However, because of the peculiar nature of the appeal with only the plaintiffs appealing, the Supreme Court affirmed. Due to the failure of the defendants to file a cross-appeal, the Supreme Court did not review that portion of the District Court's opinion that declared the Pennsylvania practice of confession judgments unconstitutional as applied to

persons earning less than $10,000 per year without an adequate showing of waiver.

The Supreme Court reiterated, however, that its decision in *Overmyer* was limited and was "not controlling precedent for other facts of other cases." *Swarb v. Lennox*, 405 U.S. at 201. The Pennsylvania procedure complained of still required that notice of the judgment be sent to the debtor. And there were provisions for seeking relief from the judgment by petition upon a prima facie showing of grounds for relief.

The burden is on one who challenges the constitutionality of a statute to show such invalidity beyond reasonable doubt. Based on the facts in this case that burden has not been met.

The appendix in the appellant's brief in *Meier I* shows that Mr. Purdun was aware of the judgment after its entry and tried unsuccessfully to negotiate a settlement. The note was given initially to make up for an otherwise inadequate down payment.

Under sec. 269.46, Stats. 1961,[5] as interpreted by this court, the Purduns had a year after notice of judgment to bring action to set it aside. No such action was taken. This court has followed a very liberal approach in opening cognovit judgments under sec. 269.46, Stats.

The case of *Sedlet Plumbing & Heating v. Village Court, Ltd.,* 61 Wis.2d 479, 212 N.W.2d 681 (1973), was

[5] "269.46. **Relief from judgments, orders and stipulations; review of judgments and orders.** (1) The court may, upon notice and just terms, at any time within one year after notice thereof, relieve a party from a judgment, order, stipulation or other proceeding against him obtained, through his mistake, inadvertence, surprise or excusable neglect and may supply an omission in any proceeding."

This section was repealed by Supreme Court Order dated February 17, 1975, effective January, 1976. 67 Wis.2d 726. See sec. 806.07, Stats., 1975. We need not decide whether this section applies to cognovit judgments.

an action to set aside a cognovit judgment under sec. 269.46, Stats., on the theory of excusable neglect because the judgment was entered without notice. The trial court denied the motion and this court reversed stating;

"This court has taken a liberal view in setting aside judgments entered on cognovits; in fact, a much more liberal view than when the judgment is entered after service of process and an opportunity to put in a defense. . . ." 61 Wis.2d at 481.

The court quoted with approval from earlier cases;

" 'The courts have generally been quite liberal in opening judgments entered on cognovit. *Wessling v. Hieb,* 180 Wis. 160. And where a substantial defense is pleaded, even though it is attacked as sham, the court should permit its presentation. *State ex rel. Bobroff v. Braun,* 209 Wis. 483.

" 'Plaintiff may be entirely correct in his contention that defendant will be unable to establish its defense by proof, but the court may not so assume. The court is compelled to assume that the defense is offered in good faith, and since it pleads one the principles of equity require that he be given that opportunity.' " 61 Wis.2d at 482.

The court said of the case before it;

"The affidavit . . . in support of his petition alleges excusable neglect because the judgment was entered on cognovit without notice . . . It may be the defenses proposed cannot be proved, but this court is compelled to assume that they are advanced in good faith in the absence of facts to the contrary in the record. Admittedly, the defendants' petition which is brought under sec. 269.46, Stats., would not be sufficient if this were not a cognovit judgment, but we conclude the trial court should have followed the liberal policy set forth in *Quinn* and *Uebele* and have set aside the judgment and ordered a trial of the case forthwith." 61 Wis.2d at 482–484.

The issue raised in *Meier I* that Ronald L. Meier was not the proper party in interest to bring the action and

raised as a defense in this case was properly stricken by the trial court. It should have been raised under sec. 269.46, Stats., when Mr. Purdun became aware of the judgment. The defense raised in this appeal based on fraud, duress, coercion and lack of consideration should have been interposed within that year.

In *Coon v. Seymour*, 71 Wis. 340, 345, 37 N.W. 243 (1888), action was brought to enjoin collection of a cognovit judgment the defense being breach of warranty on the sale of the machinery for which the cognovit notes were given. This court observed:

"It is admitted in the complaint that the plaintiffs knew of the entry of the judgment against them about fifteen years before the commencement of this action. These gross laches, appearing upon the face of the complaint, would seem to be sufficient of themselves to preclude equitable interference. . . ."

The time lapse between knowledge of the judgment and attempted assertion of defense comes too late.

The trial court in *Meier I* found that Mr. Purdun knew of the judgment.[6]

The Purduns call our attention to *Osmond v. Spence*, 327 F. Supp. 1349 (Del. 1971), holding Delaware's cognovit judgment statute unconstitutional because of lack

---

[6] The trial court said:

"*Court:* Well, there has been a tendency to consider the cognovit note something immoral, but here I don't think that is actually involved because the man knew the judgment was there. The law has been the courts open cognovit judgment, of course. I've opened a multitude of them, I have never vacated one. . . .

". . . I asked Mr. Purdun if he knew the judgment had been entered, and he knew it was there. And he's negotiated, and he's diddled around with it for a long time; so I don't find that whatever may be wrong with cognovit judgments has any influence on the situation we've got here. In other words, he had his notice, and he knew it. . . ." *Meier I*, Appellant's appendix, 102–103. *Appendices And Briefs*, Vol. 3231.

of notice and opportunity to defend. However, two things distinguish *Osmond* from the case at bar. The first is the liberal policy of opening up cognovit judgments in Wisconsin and the absence of laches in moving to set aside the judgment when it was known.

The California Supreme Court in *Isbell v. County Of Sonoma,* 21 Cal.3d 61, 145 Cal. Rptr. 368, 577 P.2d 188 (1978), held the California cognovit statute for non-consumer debtors void for lack of due process. But the California law limited a motion to set aside such judgment to six months from entry or an action to set aside for extrinsic fraud. The Wisconsin provisions for opening up cognovit judgments provide much greater protection to cognovit judgment debtors and opportunities to challenge such judgments.

In accordance with *Overmyer,* we conclude that the Wisconsin cognovit note statute in effect in Wisconsin at the time the note in this case was signed and judgment taken was not unconstitutional on its face and that the defendant was not denied due process under the facts of this case.

*By the Court.*—Judgment affirmed.